Case number 22-7047. Davon Tinius, at balance, versus Luke Choi, D.C. Metropolitan Police Officer, at out. Mr. DeVita, for the at balance. Ms. Johnson, for the at police. Good morning. Morning. On June 1st of 2020, the District of Columbia government  In response, they enacted a curfew, which did not regulate looting, burning, or vandalism, but which, in fact, criminalized ordinarily innocent activities like walking, biking, and running. The curfew did not contain a First Amendment exception, and the curfew also contained a term lawyering, which no court has ever been able to define satisfactorily. What this court has to determine is whether or not the curfew law is constitutional, because if the court concludes that it is not constitutional, then everything else falls by the wayside. For example, respect to claims of false arrest. My contention would be that you have to start with a law that's valid. You have to start with a law that's constitutional, because if you don't, there's no authority to act at all. There's no authority to make the arrest. As a result, it doesn't matter whether the officers were acting in good faith, it doesn't matter whether they claim that their activities were privileged, because they have to have a law which allows them to make the arrest. For example, I couldn't arrest anybody in this room because they don't have the authority, and so any attempt on my part would be illegal no matter whether I had a good faith belief in its reasonableness or not. Mr. DeVita, how do you respond to the district's argument that the use of the term loitering in the statute is quite different from its use in other statutes that bar loitering? Because here, it's one of several terms that make clear that it wasn't lawful during the curfew period for people to be out and about for any purpose, except for the very narrow exceptions. And you didn't file a reply brief, so we don't know what your response is on that. Well, my response, I think, was actually within the brief I had, which is that if you let the police make those determinations, you've essentially created a statute that doesn't give any boundaries at all to what the police can do. For example, the district court— But that doesn't really respond to their point, because their point is that the precedents that find loitering to be vague are vague because it's difficult for either the members of the public or the police to know when someone is legitimately waiting for their ride versus when someone is loitering. Whereas under this statute, whether you're waiting for a ride, walking, running, driving, or loitering, it's all equally prohibited. So that line between legitimate presence on the street and illegitimate loitering is just not salient under this curfew. Once again, the statute doesn't define the term. And if it doesn't define the term, I don't see how you can weed in the argument that people should interpret it to mean that you don't have any right to be on the street at all. Loitering doesn't mean that you don't have any right to be on the street at all. And does this putative vagueness affect your clients at all? They acknowledged they were there under the terms of the curfew after it came into play. Well, who knows what the police were arresting them for? That was never really specified. And at this point in time, I think the problem is whether you start with a statute that's constitutional to begin with. And there certainly was no—every court in this country that has ever looked at a law or a curfew or any other type of legal—any type of law that had the word loitering in it has always said it's impossible to define. For example, the U.S. District Court said loitering would mean lagging behind. How do you determine when somebody's lagging behind? What's the time amount that you're supposed to be on the street? If you stop to look at a store, are you waiting too long? The long and the short of it is they can't—the district court and the government cannot read into the word loitering the idea that people who are not trained in the law should automatically assume that that means that you can't be on the street at all. Who knows what loitering is? That's really the problem, is that if you leave it like that, you leave it up to the police to make those decisions, and the police may very well look at somebody who's out on the street, decide that they don't like what they're saying, and say, well, he's been on the street 10 minutes. He's loitering. Well, what if he's on the street five minutes? Would he be loitering 15 minutes? Is that loitering? It's just—it's completely undefined. And that's the basic problem that the courts are trying to prevent, is a statute that's vague that leaves it up to the police officer to decide who he likes or who she likes, who they don't like, who they want on the street, who they don't want on the street. If it's completely vague, the police can do anything they want. May I ask you a question? So you are challenging the constitutionality of this curfew order. Yes. And with respect to your First Amendment claims, the defendants are the individual police officers. And so I'm wondering why the District of Columbia is not a defendant since you are challenging the curfew order, and if there are any precedents that adopt the same procedure where you're suing individual police officers when you're challenging the constitutionality of an order like a curfew order? Well, first of all, you know, under 42 U.S.C. Section 1983, in order to prove that the city is liable, you have to prove that the actions were the result of custom policy and practice of the city. And I just don't think that applies to this situation. The city is a defendant with respect to the common law because they have responded to that superior liability. But— I'm puzzled by that. This is their policy. They adopted the curfew as official policy of the city, no? The mayor adopted it. Yeah, I understand that. That's a good question. To be honest with you, ordinarily in situations, I've always sued the police officers simply because they are the individuals who are acting as long as they're in the case. And I take your point to be that even if the way you framed the case, it couldn't invalidate the curfew, your point is that it didn't extend authority, it didn't constitutionally extend authority to the arresting officer. That's correct, Your Honor. And, you know, I don't think the custom policy and practice in terms of actually habits that the city engages in, for example, if there's a pattern of arresting people without—for excessive force, I wasn't considering it in the light that you were talking about. But then don't you run into the problem of qualified immunity? Well, that's what I was trying to address at the outset, which is that I think that you have to have two steps here. The first step is, did they have any lawful authority to do what they were doing at all? You know, for example, I can't arrest anybody in this room because I don't have the lawful authority to do it. And so no matter what I do, anything I do is illegal because I don't have the lawful authority to act. But it has to be clearly established. Well, not only that, but you have to start off with a law. There has to be a law. And if the law is unconstitutional, it's void from the moment it was enacted. But how are the police officers supposed to know that when they're out enforcing a curfew order? And that's another good question. So the question becomes, let's say these officers were acting in good faith. Let's say they reasonably believed they were enforcing the law. The problem is that if you take that—if you let them assert that defense, it leaves my clients without a recess. If you take a look at the Yale College decision here, which I cited, which took me a long time to find. It's really a long time. But what the court said in that case is that you just can't—you can't allow the public officials to escape liability because it leaves somebody who's been—had their constitutional rights violated without revenue. And I think that's the basic bottom line here, is that if there is—if you don't start off with a law, you don't even get into reasonable good faith. You don't even get into privilege. You have to have a law in order to be able to act at all. And I think the Yale College decision, as I mentioned, is on point. And it basically holds that you can't allow the public, you can't allow the government, you can't allow the police to escape liability for their actions if they're acting with respect to an invalid law. But that case predates Harlow, Anderson v. Creighton, all of the Supreme Court's contemporary qualified immunity doctrine. And the courts do grapple, as you mentioned, with the question when and under what circumstances are members of the public entitled to redress. But it's under a rubric that postdates Yale College. Well, old doesn't necessarily mean invalid. I'm 64 years old myself. But more to the point, the—I don't think any of the decisions she's talking about dealt with unconstitutional statutes. All right. We should move on and hear from— Oh, I'm sorry. Thank you. —other counsel. Did you intend to reserve time? One minute. We'll give you the one minute. Now we'll hear from Ms. Johnson. Good morning. If you want to change the height there, it's over on the right. And it actually helps us hear the more direct the microphone is in front of you. Thank you. Good morning. May it please the Court. Holly Johnson for the District of Columbia. Hold up my— You want me to move this one this way? Yeah, thank you. Is that better? Thank you. In 1979, the Supreme Court held that probable cause is not defeated by the unconstitutionality of the law. And I want to be clear. By no means are we conceding that the curfew was unconstitutional. But this was where the Court left off. So I want to start there. And what the Court said there, the Supreme Court said, is that the police must enforce laws until and unless they are declared unconstitutional. And pointed out all of the risks and dangers of having the police decide whether they think a law is constitutional to enforce it. So probable cause itself, even if this Court were to find that the curfew was unconstitutional, would not be defeated by that finding. But even beyond that, in Letterman, this Court held that even an astonishingly broad unconstitutional law—it was a ban on demonstrating on the Capitol sidewalk, so it was a First Amendment case—that even that, the enactment of the law foreclosed speculation of the police officer regarding the reconstitutionality. So even that astonishingly broad and, according to this Court, plainly unconstitutional law, still the officer was entitled to qualified immunity with regard to the arrest, because it had not been declared unconstitutional. The standard for qualified immunity is whether a law is clearly established. So all of the constitutional claims here could easily be disposed of via qualified immunity. I don't know that that's the direction this Court wants to go. I'm curious about what you think would be the better course. We always have a choice in a case such as this where there's a qualified immunity. Assertion on officials' part whether to go the Saussure-Pearson route, and under those cases whether to decide the merits or whether to assume the merits and decide qualified immunity. Do you have an argument as to which course we should choose? I think there could be some benefit to a ruling on the merits on the First Amendment for purposes of clarity going forward. There's no doubt that the mayor at some point in the future will have to declare a public emergency again. It's entirely possible a curfew would need to be declared either due to a natural disaster or civil unrest. So it would be nice to know the Court's position on that. With regard to this, we believe, completely forfeited claim regarding intrastate travel or even with regard to the loitering thing. We don't think those are substantial enough arguments to require anything beyond a qualified immunity holding. And of course, when you say with regard to the loitering, I thought that was the First Amendment. But I thought that was the only other constitutional argument. Or I guess tailoring. Tailoring, it would be the loitering is a vagueness argument. Yeah, I suppose that. Well, my understanding is that vagueness comes under due process. So that would be a Fifth Amendment claim. It's not really clear because all of these fell under the rubric of false arrest. So you sort of had to parse out the amendment. So there's a First Amendment claim, just a very straight up claim. The district does not dispute that there was an infringement on First Amendment rights and that some level of heightened scrutiny would be warranted. We believe that the appropriate level of scrutiny would be the Chalk and Smith line of cases because this was a public emergency and we obviously prefer that this court highlight that as a possibility. But we focused our briefing on intermediate scrutiny because that's where the district court landed and because we think that this rule survives intermediate scrutiny with flying colors. So can you talk a little bit about that? Because the one thing that I see that gives me some pause is that this was a curfew for the entire city. Yes. How is that tailored? Yes. So I want to just lay a marker and say that we believe that even under strict scrutiny, this would survive. But I will focus on the tailoring required under intermediate scrutiny because this was a content neutral law. Under intermediate scrutiny, first for the legal standard, it doesn't have to be the least restrictive means. It just has to be a means where it would be less effective absent the restriction. And there are very good reasons to do a district wide curfew in a situation like this. The undisputed facts, and they're alleged in the complaint, is that civil unrest, dangerous civil unrest was happening all over the district. And so there was no question as to where it was going to pop up. If this court looks to the Jeffries case cited in my brief, it is a district court case, but it's from the city of New York. It involves a curfew, I think the same weekend, the same events. So it's very similar. And in Jeffries, Jeffries applied strict scrutiny. The court pointed out that the rioting and violence and vandalism was taking place in different boroughs. Not every single street, not every single borough, but because it was popping up in different areas, it was perfectly reasonable to do a citywide curfew for the brief period of time for those two nights. What about the lack of any carve out, any First Amendment demonstration area that have been policed and localized away from businesses and other buildings subject to looting? So the First Amendment carve out, I want to, if I can take a moment before I respond to that, because I do want to point out that the practical reasons for a district wide curfew are really important. The last thing that the district wants to do is to push the violence and destruction out of the middle of the city and into the residential areas. And there could be some real equity concerns with regard to that as well as to which parts of the city are shut down. It could cause racial imbalance. So there were a lot of reasons not to do that. What is that in the record? Or is this something that needs discovery? It doesn't need discovery because it's clear and straightforward. If you look at like the Jeffrey case sort of gives you examples of how this works. If you look at the purposes of the curfew that are listed in 1C, which is a California case coming out of the Rodney King protests. I mean, in answer, and I apologize, Judge Pillard, I do want to get to your question. But in answer, in the one regarding the event signs, this court held that you don't need evidence where there's a straightforward line of reasoning between the means and the ends and that the quantum of evidence needed will vary with the novelty and plausibility of the justification. The curfew in response to rioting is not novel. It is a very standard approach. It's very plausible that that's how you restore peace and order. So I guess my follow up would just be then where in the complaint or you're saying it's undisputed that the rioting is all over the city. Where can I find that? So there's a couple of places. First of all, in the complaint itself, if you look at JA35, the plaintiffs allege that the mayor's order cites the fact that numerous businesses, vehicles and government buildings have been vandalized, burned or looted and that rioting had occurred. And it lists all these areas across the district. So that's the complaint itself. But beyond that, the complaint incorporates the curfew orders, and there's been no dispute on the part of the plaintiffs that those are properly incorporated into the complaint. This court's rules and the district court's rules allow for incorporation of documents and the curfew orders. I would say probably the best place to look is JA32 and JA31, like details everything that had happened in the previous nights and explains that these were not isolated incidents. More than 80 arrests took place in the two nights preceding this curfew and more than the majority of those were felonies. So this is a very serious circumstance. The other reason we know that it was serious is that the mayor declared a public emergency and there's a statutory standard for that as well. So if I may, though, like looking at the language that you're citing, it says northeast, northwest, stretching to Georgetown, Golden Triangle Business Improvement District, downtown DC Business Improvement District and the Mount Vernon Triangle Community District. There's a lot of DC that's not included in here, southeast and southwest. Well, first of all, I mean, yes. I mean, this does not list in detail everywhere. But again, I was talking about narrow tailoring. It's supposed to be related to where the problem is. And if the problem's not all over the city, why is this curfew? Because the risk of pushing the rioting out into other neighborhoods. And where is that? It's not. It's common sense. And I understand we're working on a motion to dismiss her. That's what I'm saying. And we will also know, and I think this is important, that this is not an argument that the plaintiffs have raised. The only tailoring that they propose, and it is their burden to propose the alternatives, the only tailoring that the plaintiffs propose is a First Amendment exception, which is the question that I've been making Judge Pillard wait for. So I'm going to turn to that now. The problem with the First Amendment exception is that when the danger arises out of people who are purporting to be out there exercising their First Amendment rights, there's no line between the would-be wrongdoers and the protesters themselves. So that's the first problem. I will note that there are no examples or cases or anything cited by the plaintiffs in which an emergency curfew had a First Amendment exception. The First Amendment exception always comes into play with permanent curfews, not with these emergency curfews, or with permanent restrictions on certain activities. The second thing I would point out is that the First Amendment exception would not protect the protesters. And if you look at 1C, one of the purposes of the curfew during a time of civil unrest is to protect the innocent people who are out there, to make it clear that when they are out there, they are safe. And when it's not safe, they come inside. And also, if this court looks at Menotti, that's- put them in a place where they can be adequately policed. You localize the number of people and the nature of the activity that's permitted outside. So, again, the plaintiffs have the duty to propose so that we can properly respond to alternatives. And nobody's ever proposed a zone in which there was a safely patrolled protest. Well, one of the other things the city was asserting was that this was during a period of COVID, and they did not want collections of people. You're jumping right in there, right in the order. It is. That's a really good point. It's not just that there might be a spread of bad behavior, but there was a problem of encouraging the spread of people. That was prohibited. Gatherings of 10 people or more was already prohibited. Of course. I appreciate you raising that. That's another reason it's in the record. And certainly corralling up all the protesters into one location and creating like a protest zone. But again, that wasn't- They argued that it was unconstitutional for want of a carve-out. Yeah, the carve-out, but not a carve-out in which there was a safe. I'm talking about specifically creating one location. Now, if there was a carve-out that allowed the protest, allowed First Amendment activity to go on everywhere, then you run into the problem the police had during the WTO protests, which is pointed out in Menotti, which is that the protesters, by no fault of their own, got in the way of the police. They entered traffic, which made it so the police couldn't respond. And the people who were intent on violence used the protesters kind of as human shields. They would merge in and out of the protests. And so if you imagine, just from a practical point of view, a police officer encountering a group of people, and maybe their intent on joining a riot, they encounter this group of people, and they tell the people that- Those people say, well, we're protesting. First Amendment exception. And they go on their merry way. Well, there's no way for the police to enforce that. So it just wouldn't have been in practice. All right. You had a sentence to wrap up your- I see your time is up. I'm good. Thank you. Thank you, Ms. Johnson. Mr. DeVita, I think we ate into your rebuttal time, but you sought to preserve a minute, and it looks like we will give you that. Democracy can be a fragile thing. It's dependent on people being able to exercise their First Amendment rights. My clients weren't criminals. All they were doing was protesting what they believed to be police brutality. This curfew law is unconstitutional for several reasons. First of all, it's overbroad. Secondly, it's void for vagueness. The District of Columbia knows how to create a curfew that has a First Amendment exception. If you take a look at the Waters versus Barrett case, or the Hutchins case, we have precedent in this court, the U.S. District Court. In the first case, they found the law to be unconstitutional, or they found the law to be constitutional because it did have an exception, and in Hutchins, it did not. The long and the short of it is, there should be an exception in the law for First Amendment activities. Otherwise, governments can use a curfew law to curb speech that they simply don't like. Thank you. Case is submitted.
judges: Pillard, Pan, Edwards